**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ESSEX MOTORS, INC., d/b/a SQUARE ONE AUTO<br>Plaintiff,<br>v.<br>NETFLIX, INC.,<br>Defendant. | Civil Action No. 25-17230 (JXN)(MAH)<br>**OPINION** |

**NEALS**, District Judge

Life sometimes imitates art. The City of Rahway ("Rahway") shut down part of Route 27 so Defendant Netflix, Inc. ("Netflix") could film a scene in the upcoming movie "*Bad Day*." The filming allegedly caused local businesses along Route 27 to suffer a few bad days of sales. Plaintiff Essex Motors, Inc., d/b/a Square One Auto ("Square One"), a car dealership, is one of those businesses. Square One sued Netflix for the sales it allegedly lost during the road closure.

Before the Court is Netflix's motion to dismiss the amended complaint[1] (ECF No. 20), and for sanctions[2] (ECF No. 17). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure[3] 78 and Local Civil Rule 78.1. For the reasons set forth below, Netflix's motion to dismiss (ECF No. 20) is **GRANTED** and Netflix's motion for sanctions (ECF No. 17) is **DENIED**.

[1] To which Square One opposed (ECF No. 24) and Netflix replied (ECF No. 25).

[2] To which Square One opposed (ECF No. 22) and Netflix replied (ECF No. 23).

[3] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

# I. BACKGROUND

## A. Statement of Facts

Square One runs a car dealership in Rahway occupying "several blocks" of St. George Avenue, a portion of Route 27. (*See* Am. Compl. ¶ 9, ECF No. 14.) The dealership had entrances on Maple Avenue and West Hazelwood Avenue—two streets intersecting with Route 27. (*Id.*) Because a picture is worth a thousand words, the Court spares words and provides below an outline of Square One's footprint.




*Map Maker*, AtList, https://www.atlist.com/free-tools/map-maker (last visited July 27, 2026)[4]; (*see also* Am. Compl. ¶ 9.)

Netflix sought to film scenes for "*Bad Day*," an action-comedy movie starring Cameron Diaz, in Rahway. (*See* Am. Compl. ¶¶ 1, 6.) On October 10, 2025, Rahway issued Netflix a filming permit ("Rahway Permit").[5] (*See* Def.'s Ex. A ("Rahway Permit"), ECF No. 20-3.) The Rahway

---

[4] On a motion to dismiss, the Court "may take judicial notice of the distance between two geographical locations." *Bond v. Solvay Specialty Polymers, USA, LLC*, 583 F. Supp. 3d 643, 647 n.3 (D.N.J. 2022).

[5] "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). "However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'" *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). The "critical" question is "whether the claims in the

Permit authorized the closure of Route 27 between Central Avenue and Grove Street; on Pierpont Street between West Milton Avenue and Elm Avenue; on Maple Avenue between Jefferson Avenue and Jacques Avenue; and on Bryant Avenue between West Emerson Avenue and West Hazelwood Avenue. (*Id.*) The Rahway Permit allowed Netflix to film at the above locations from October 16 to 17, 2025, between the hours of 5:00 am to 8:00 am. (*Id.*) Below is Square One's footprint compared to Netflix's filming locations:




*Map Maker*, AtList, https://www.atlist.com/free-tools/map-maker (last visited July 27, 2026); (*see also* Rahway Permit.) And on October 15, 2025, the New Jersey Department of Transportation ("NJDOT") issued a Highway Occupancy Permit ("NJDOT Permit") authorizing the closure of "[b]oth side(s) of Route No. 27" between "milepost 28.00 [and] 29.00" so an "NYC city bus

---

complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.* (quoting *In re Burlington Coat Factory*, 114 F.3d at 1426).

Here, the Amended Complaint expressly seeks to recover based on "manner in which Netflix conducted its business pursuant to" its permits. (Am. Compl. ¶ 18.) The Court, accordingly, considers the Rahway Permit in deciding Netflix's motion to dismiss.

[could] conduct[] a stunt 270-degree spin on corner of NJ-27 and Maple Avenue in Rahway."[6] (*See* Def.'s Ex. B ("NJDOT Permit"), ECF No. 20-4.)

Square One claims Netflix closed more roads than those identified in either Permit. (*See* Am. Compl. ¶ 12.) In Square One's telling, the closures actually looked like this:




*See Map Maker*, AtList, https://www.atlist.com/free-tools/map-maker (last visited July 27, 2026); (*see also* Am. Compl. ¶ 12 (alleging additional street closures).) According to Square One, Netflix informed businesses on Route 27 about the closure only a few days before filming, leaving Square One with little time to prepare. (Am. Compl. ¶ 19.) Square One alleges the closures "completely and totally impeded" its "ability to conduct business" during filming, "as Square One's customers and potential customers had no vehicle access to the Square One facility." (*Id.* ¶¶ 12, 14.) And Square One claims the "manner in which the road closures were enforced were draconian," as

[6] Because Square One expressly seeks to recover based on "manner in which Netflix conducted its business pursuant to" its permits (Am. Compl. ¶ 18), the Court considers the NJDOT Permit as a document integral to and expressly relied upon in the Amended Complaint. *Schmidt*, 770 F.3d at 249.

Square One's employees were denied access to their own place of work. (*Id.* ¶ 15.) Due to the filming-related closures, Square One asserts it lost two days' worth of business. (*Id.* ¶ 35.)

**B. Procedural History**

Square One sued Netflix in New Jersey Superior Court the day before filming, on October 15, 2025. (*See* Compl., ECF No. 1-1.) The Complaint included a claim for tortious interference with prospective economic advantage and a request for an injunction against filming. (*See id.* at 6–8.) The Superior Court judge[7] denied Square One's injunction request the next day. (*See* Order on Inj., ECF No. 1-1 at *33–38.) Thereafter, Netflix timely removed. (*See* Notice of Removal, ECF No. 1.) On December 12, 2025, Netflix moved to dismiss. (*See* First Mot. to Dismiss, ECF No. 13.) In response, Square One filed the Amended Complaint without first seeking leave of Court. (*See* Am. Compl.) The Amended Complaint contains only one claim for tortious interference with prospective economic advantage. (*See generally id.*)

After Square One filed the Amended Complaint, Netflix moved for sanctions under Rule 11. (*See* Sanctions Mot., ECF No. 17.) Netflix argues that the "central premise" of Square One's Amended Complaint—that the closure led to a "complete lack of access"—was and is "demonstrabl[y] fals[e]." (Sanctions Moving Br. at 1, ECF No. 17-1.) According to Netflix, Square One never used Route 27 "for customer ingress and egress." (*Id.* at 3.) Indeed, in Netflix's telling, Square One blocks its' Route 27 entrances with bollards, chains, and cars. (*See id.* at 10–16.) Instead, Square One customers can only enter the dealership on Maple Avenue or West Hazelwood Avenue. (*See id.* at 16–17.) Netflix thus argues closing Route 27 could not have caused a "complete lack of access," which Square One's counsel knew or should have known was false. (*See generally*

[7] The Hon. John M. Deitch, J.S.C.

*id.*) Square One opposed (Opp'n to Sanctions, ECF No. 22), and Netflix replied (Sanctions Reply, ECF No. 23).

Because Square One filed an amended pleading without seeking leave of Court, the Court allowed Netflix to file a motion to dismiss without first requesting a pre-motion conference. (*See* Text Order, ECF No. 18.) Netflix so moved on January 9, 2026. (*See* Second Mot. to Dismiss ("MTD"), ECF No. 20.) Netflix argues Square One fails to state a tortious interference claim because (1) "governmental entities and employees possess discretion to issue street closure permits and cannot be sued for exercising their lawful authority to do so"; and (2) "by definition, a private business conducting permitted activities does not act tortiously." (MTD Moving Br. at 9, ECF No. 20-1.) Square One opposed (Opp'n to MTD, ECF No. 24), and Netflix replied (MTD Reply, ECF No. 25).

## II. LEGAL STANDARD

### A. Motion to Dismiss

Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court conducts a three-step inquiry in evaluating a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the Court identifies "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the Court accepts all plaintiff's well-pleaded factual allegations as true and "construe[s] the complaint in the light

most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). But the Court disregards "legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). Third, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

**B. Rule 11 Sanctions**

Rule 11 "imposes an affirmative duty on parties to conduct a reasonable inquiry into the factual and legal basis of claims before filing them with the court." *Irene Schneider Fam. Tr. v. Christiana Tr.*, No. 23-1980, 2024 WL 4263309, at *8 (D.N.J. Sept. 23, 2024). If a party violates Rule 11, the Court "may impose an appropriate sanction." Fed. R. Civ. P. 11(c).

The Rule provides, in relevant part, that:

> By presenting to the court a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). "The lodestar of Rule 11 is thus reasonableness, not bad faith." *Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 147 (3d Cir. 2024). Rule 11 "imposes an objective

standard of reasonable inquiry." *Id.* at 147–48 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991)). The question is "what was reasonable to believe at the time the pleading . . . was submitted." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988) (citation omitted). "In other words, courts can sanction lawyers for what they should have known, not just what they knew." *Wharton*, 95 F.4th at 148.

But Rule 11 "is not an appropriate vehicle for resolving legal or factual disputes, or addressing the strength or merits of a claim." *Dirauf v. Berger*, 506 F. Supp. 3d 254, 269 (D.N.J. 2020) (cleaned up) (quoting *Strikeforce Techs., Inc. v. WhiteSky Inc.*, No. 13-1895, 2013 WL 5574643 at *4 (D.N.J. Oct. 9, 2013)), *aff'd,* 57 F.4th 101 (3d Cir. 2022). Rather, sanctions are warranted "only in the 'exceptional circumstance' where a claim or motion is patently [unmeritorious] or frivolous." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (quoting *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)). "Courts, therefore, have denied sanctions where the law and facts, even if not adopted by the court, are ambiguous and could be reasonably interpreted in more than one way." *In re Cendant Corp. Derivative Action Litig.*, 96 F. Supp. 2d 403, 405 (D.N.J. 2000). Ruling on a sanctions motion is committed to the Court's "sound discretion." *Wharton*, 95 F.4th at 147.

## III. DISCUSSION

### A. Square One Fails to State a Tortious Interference Claim

To state a claim for tortious interference with prospective economic advantage, the plaintiff must show: "(1) the existence of the contract or the prospective economic relationship; (2) interference which was intentional and with malice; (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages." *MedWell, LLC v. Cigna Corp.*, No. 20-10627,

2023 WL 4045089, at *2 (D.N.J. June 16, 2023) (quoting *Velop, Inc. v. Kaplan*, 301 N.J. Super. 32, 49 (App. Div. 1997)).

***i. Prospective Economic Relationship***

Identifying a contract or prospective economic relationship "only requires allegations that show a reasonable expectation of economic advantage." *Id.* (citing *Weil v. Express Container Corp.*, 360 N.J. Super. 599, 613 (App. Div. 2003)). But a "mere allegation of lost business does not suffice." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 494 (D.N.J. 1998) (citation omitted). Thus, "the claimed loss of . . . unknown customers cannot, standing alone, state a claim for tortious interference with prospective business relations." *Id.* (alteration in original) (citation omitted). "A plaintiff need not identify multiple lost business opportunities to establish a cause of action for tortious interference, but it must identify one." *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 358 (D.N.J. 2019). At a minimum, the plaintiff must "identify a single, specific customer that [the plaintiff] either lost or could have acquired but for [the defendant's] conduct." *Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, 332 F. App'x 787, 790 (3d Cir. 2009).

Square One merely alleges, in conclusory fashion, that "because Square One is an auto dealership, if a customer does not access the premises on the date it is looking to buy a vehicle, they will simply go elsewhere to make the purchase, meaning Square One loses that customer forever." (*See* Am. Compl. at 9.) Square One further asserts it "will suffer not only anticipated irreparable harm to its business, but also significant damages including lost business, expenses, sales expenses, employees expenses (due to loss of sales opportunities), and lost new and potential customers in an amount to be proven at trial, but believed to be in excess of $100,000." (*Id.*) But Square One has not identified "a single, specific customer" it either "lost or could have acquired

but for [Netflix's] conduct." *Am. Millennium Ins. Co.*, 332 F. App'x at 790. Instead, Square One simply alleges it lost "unknown customers." *Eli Lilly*, 23 F. Supp. 2d at 494. Accordingly, Square One's bare allegation that it lost theoretical customers, "standing alone," fails to state a claim for tortious interference upon which relief may be granted. *Id.*

***ii. Intentional and Malicious Conduct***

Intentional and malicious conduct does not literally require proof of "ill will toward the plaintiff." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751 (1989) (citation omitted). Rather, malice means "that the harm was inflicted intentionally and without justification or excuse." *Id.* Put differently, the plaintiff must show "defendants acted intentionally and wrongfully without justification." *Id.* at 756. "[M]alicious acts are determined on a case-by-case basis." *Id.* This is a "flexible" standard. *Id.* at 757. But "the ultimate inquiry is whether the conduct was 'both injurious and transgressive of generally accepted standards of common morality or of law.'" *Id.* (citation omitted). "The line clearly is drawn at conduct that is fraudulent, dishonest, or illegal and thereby interferes with a competitor's economic advantage." *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 307 (2001).

The Amended Complaint does not adequately allege Netflix acted intentionally and wrongfully without justification. That is because the Rahway and NJDOT Permits gave Netflix the *right* to have Route 27 and a few surrounding roads shut down. "As a general matter, a party cannot be held liable for tortiously interfering with another's contractual rights when pursuing its own lawful rights." *Woodmont Props., LLC v. Township of Westampton*, 470 N.J. Super. 534, 544 (App. Div. 2022). "That which one has a right to do cannot become a tort when it is done." *Rothermel v. Int'l Paper Co.*, 163 N.J. Super. 235, 244 (App. Div. 1978). Accordingly, the bare

fact that Netflix obtained permission to shut down Route 27 was not, by itself, wrongful or unjustified conduct.[8]

Square One replies that, while Netflix had permission to shut down Route 27, Netflix (1) enforced the Permits in a "draconian" manner (Am. Compl. ¶ 15), and (2) exceeded the scope of the Permits (*id.* ¶ 12). Neither argument persuades.

To start, the Amended Complaint does not plausibly allege that *Netflix* enforced the permits, as opposed to *Rahway Police*. (*See generally id.*) While the Amended Complaint asserts "the over-aggressive restrictions to access [] were on information and belief suggested and required by Netflix," (*id.* ¶ 37), Netflix had the legal right to restrict access to the streets upon which it had a permit to film. So, the mere fact that Netflix requested that police enforce the Permits does not, by and of itself, evidence wrongful conduct.

Next, even if the Court takes as true Square One's threadbare assertion that Netflix closed more streets than allowed, Square One does not plausibly allege that closing additional streets caused the dealership to lose business. To state a viable tortious interference claim, the plaintiff must show that, had the defendant not interfered, "there was a reasonable probability that [the plaintiff] would have received the anticipated economic benefit." *Walters*, 167 N.J. at 306 (quoting *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 199 (App. Div. 1995)). Here, the Rahway Permit, as written, prevented customers from accessing Square One directly from Route 27 or indirectly by cutting across Route 27. The Rahway Permit also closed

---

[8] Netflix devotes considerable attention to a public entity's immunity from suit for issuing a permit. (*See, e.g.*, MTD Moving Br. at 9.) This point warrants only brief discussion. Under New Jersey law "[a] public entity is not liable for an injury caused by the issuance . . . of . . . any permit . . . where the public entity or public employee is authorized by law to determine whether or not such authorization should be issued." N.J.S.A. 59:2-5. A "public entity" means "the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J.S.A. 59:1-3. Netflix is none of the above. And the Court cannot identify any basis for Netflix to enjoy the government's immunity from suit. *Cf. Vanchieri v. N.J. Sports & Exposition Auth.*, 104 N.J. 80, 86 (1986) ("When a public entity provides plans and specifications to an independent contractor, the public contractor will not be held liable for work performed in accordance with those plans and specifications.").

part of Maple Avenue, blocking one of the dealership's two entrances entirely. And the Rahway Permit intersected with part of West Hazelwood Avenue, leaving Square One's remaining entrance between difficult and impossible to reach. Square One does not explain how Netflix closing more streets than allowed—many of which were nowhere near the dealership—caused Square One to lose business.

Because the Amended Complaint does not adequately allege lost business, intentional and wrongful conduct, or causation, Square One's tortious interference claim is **dismissed *without prejudice***.

**B. Sanctions Are Unwarranted**

As discussed above, courts impose sanctions only in exceptional cases. *Ford Motor Co.*, 930 F.2d at 289. Rule 11 is not "an appropriate vehicle for resolving legal or factual disputes." *Dirauf*, 506 F. Supp. 3d at 269. Sanctions are unwarranted "where the law and facts, even if not adopted by the court, are ambiguous and could be reasonably interpreted in more than one way." *In re Cendant*, 96 F. Supp. 2d at 405.

Square One claims shutting down Route 27 caused a "complete lack of access" to the dealership. (Am. Compl. ¶ 36.) Netflix argues this statement is false because Square One did not have an entrance on Route 27; both entrances to the dealership were on adjoining streets. (*See* Sanctions Moving Br.) The Court disagrees. First, Square One does not directly assert it had an entrance directly on Route 27. And the facts in the Amended Complaint could be reasonably interpreted more than one way. Blocking Route 27 could block a customer from using Square One's side street entrances. While this theory does not give rise to a tortious interference claim, it neither forms the basis for sanctions. Accordingly, Netflix's sanctions motion is **denied**.

## IV. CONCLUSION

For the foregoing reasons, Netflix's motion to dismiss (ECF No. 20) is **GRANTED** and Netflix's motion for sanctions (ECF No. 17) is **DENIED**. An appropriate Order accompanies this Opinion.

**DATED: 8/4/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**